CLARENCE E. MORRIS, INC., a California corporation duly authorized to do business in the State of Nevada, Appellant,

v.

Alvin J. VITEK and United Pacific Insurance Company, a Washington corporation duly authorized to do business in the State of Nevada, Appellees.

No. 22351.

United States Court of Appeals Ninth Circuit.

June 17, 1969.

Carl J. Christensen (argued), Stanley W. Pierce, Las Vegas, Nev., for appellant.

Rex A. Jemison (argued), of Singleton, De Lanoy, Jemison & Reid, Las Vegas, Nev., for appellees.

Before HAMLEY, HAMLIN and HUFSTEDLER, Circuit Judges.

HUFSTEDLER, Circuit Judge.

Appellant, Clarence E. Morris, Inc. ("Morris"), filed the present action against appellee, United Pacific Insurance Company, a Washington corporation ("United Pacific"), and Alvin J. Vitek in a Nevada court. Appellee removed the action to the United States District Court for the District of Nevada. A default judgment was entered for Morris, but the District Court thereafter set aside the default and granted United Pacific's motion to dismiss for failure to state a claim for relief. Morris appeals. We hold that there is insufficient basis for federal jurisdiction over this action.

Morris's claims against Vitek and United Pacific arise out of a breach of contract action which Vitek commenced against Morris in the Nevada courts. After filing his complaint, Vitek sought to attach certain real and personal property belonging to Morris. Nevada law allows the plaintiff to have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered in certain enumerated categories of cases. (Nev.Rev.Stat. § 31.010.) One such category includes actions "upon a contract, express or implied, for the direct payment of money." Before a writ of attachment can issue, however, Nevada law also requires that the plaintiff supply a written undertaking with two or more sureties to the effect that "if the plaintiff dismiss such action or if the defendant recover judgment the plaintiff will pay * * * all costs that may be awarded to the defendant, and all damages which he may sustain by reason of the attachment. * * * *" (Nev.Rev.Stat. § 31.030.) The undertaking must be for not less than one fourth the amount claimed by the plaintiff.

United Pacific agreed to act as surety for Vitek, and Vitek thereupon secured a writ of attachment on Morris's property. Thereafter, Morris moved to discharge the attachment on the ground that it was not authorized by statute. Morris contended that the contract in question provided for payment either in cash or in certain securities and therefore was not a contract for "the direct payment of money." The contention was ultimately sustained on appeal, and the attachment was dismissed. (Clarence E. Morris, Inc. v. Vitek (1964) 80 Nev. 408, 395 P.2d 521.)

Morris then commenced the present action in the Nevada courts against Vitek and United Pacific, as surety, to recover an alleged $470,000 damages for the wrongful attachment of his property. United Pacific filed a petition for removal which recited that plaintiff Morris is a California corporation, that defendant Vitek is a citizen of California, and that defendant United Pacific is a Washington corporation with its principal place of business in Washington. Morris filed a motion to remand. The District Court denied the motion to remand. At the time the District Court assumed jurisdiction, Vitek was unserved, but before the motion to dismiss was heard, Vitek had been served in Nevada.

The requisite complete diversity of citizenship between the plaintiff and the named defendants is lacking because Morris and Vitek are both California

citizens. The District Court held that removal jurisdiction existed despite the absence of complete diversity upon two grounds: First, the claims by Morris against Vitek and by Morris against United Pacific were separate and independent claims within the meaning of 28 U.S.C. section 1441(c). Second, Vitek's citizenship did not defeat diversity because he had not been served at the time the removal petition and the motion to remand were filed.

 Assuming lack of complete diversity, this case could not be removed unless Morris's claim against United Pacific is a "separate and independent claim or cause of action" from Morris's claim against Vitek and the claim against United Pacific would be removable if sued upon alone. 28 U.S.C. § 1441(c).) The District Court decided that these prerequisites were met because Morris's claim against Vitek was in tort for malicious prosecution and its claim against United Pacific was in contract. Claims are not separate and independent of each other for the purpose of section 1441(c) if multiple claims grow out of a single actionable wrong. A single wrong cannot be parlayed into separate and independent causes of action by multiplying the legal theories upon which relief is sought or by multiplying defendants against whom a remedy is sought for the same injury. (American Fire & Cas. Co. v. Finn (1951) 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702.) Morris's claims against both Vitek and United Pacific spring from a single source—the wrongful attachment of Morris's property—for which a single recovery could be obtained no matter

how many defendants shared liability. The two claims are not separate and independent of one another. (*Cf.* Gray v. New Mexico Military Institute (10th Cir. 1957) 249 F.2d 28.)

██ ██ The second ground for the District Court's decision that removal jurisdiction existed was that Vitek could be ignored because he was an unserved, nonresident defendant. The ruling is contrary to Pullman Co. v. Jenkins (1939) 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334. *Pullman* states two rules: (1) A nonresident defendant cannot remove a "nonseparable" action if the citizenship of any codefendant, joined by the plaintiff in good faith, destroys complete diversity, regardless of service or nonservice upon the codefendant; (2) a nonresident defendant can remove a "nonseparable" action without joining in his petition unserved codefendants whose citizenship would not destroy diversity. Whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service.[1]

The *Pullman* rule does not adversely affect a defendant's right to remove if there are later developments in the case which create diversity initially absent, as, for example, the dismissal of a party whose presence destroyed diversity. (28 U.S.C. § 1446(b); Grigg v. Southern Pacific Co. (9th Cir. 1957) 246 F.2d 613; Southern Pacific Co. v. Haight (9th Cir. 1942) 126 F.2d 900; 1A J. Moore, Federal Practice, *supra* note 1, at 1238–40.)

---

1. Occasional holdings that unserved codefendants can be ignored in deciding removal petitions stem from the erroneous assumption that *Pullman* turned on a distinction between unserved nonresident defendants and unserved resident defendants, rather than upon want of diversity, and the further misassumption that 28 U.S.C. § 1441(b), by implication, expanded removal jurisdiction to permit removal, despite want of diversity, if a resident defendant whose presence would de-

feat diversity had not been served. *E. g.*, Robertson v. Nye (W.D.Okla.1967) 275 F.Supp. 497; Duff v. Aetna Casualty & Surety Co. (N.D.Okla.1968) 287 F. Supp. 138 (both ignoring unserved codefendants). *Contra*, Wolsum v. J. W. Bateson Co. (W.D.Mo.1960) 182 F.Supp. 879; Rick v. Hedrick (W.D.Mo.1958) 167 F.Supp. 491. *See* discussion 1A J. Moore, Federal Practice 1172–74 (1965); *id.* at 12 (Supp.1968).

The case is remanded to the District Court with directions to vacate the judgment entered and, if no further steps are taken by any party to affect its jurisdiction, to remand the case to the Nevada courts. Each party shall bear its own costs on appeal.